EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
CATHY J. OSTILLER (Cal. Bar No. 174582)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6159
    Facsimile: (213) 894-6269
    E-mail:   cathy.ostiller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>LORI RENEE MILLER,<br><br>       Defendant. | No. CR 15-00474-PSG-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>LORI RENEE MILLER |

1.   This constitutes the plea agreement between LORI RENEE MILLER ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count twenty-seven of the indictment in <u>United States v. Lori Renee Miller, et al.</u>, CR

No. 15-00474-PSG, which charges defendant with Health Care Fraud in violation of 18 U.S.C. § 1347.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Make restitution in accordance with the Court's order, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.   Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving

the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

3.   Defendant further agrees to cooperate fully with the USAO, the California Department of Justice, Bureau of Medi-Cal Fraud and Elder Abuse, the United States Department of Health and Human Services, Office of Inspector General, and the Internal Revenue Service – Criminal Investigation, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated March 18, 2016; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

3

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Recommend that the Court vary downward in offense level by an additional three levels based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), including, specifically, the history and characteristics of defendant.

f.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 29 or higher.  For purposes of this

4

agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

6.   The USAO further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

5

c.     In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.     If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.   Defendant understands the following:

a.     Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.     Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.     Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.     At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has

provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.   Defendant understands that for defendant to be guilty of the crime charged in count twenty-seven, that is, Health Care Fraud, in violation of Title 18, United States Code, Section 1347, the following must be true: (1) defendant knowingly and willfully participated in or devised a scheme or plan to defraud a health care benefit program; (2) the statements made or facts omitted as part of the scheme were material; (3) defendant acted with intent to defraud; and (4) the scheme involved the delivery of or payment for health care benefits, items, or services.  The term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.  "Willfully" means that the defendant committed the act voluntarily and purposefully, and with knowledge that the conduct was, in a general sense, unlawful.

PENALTIES AND RESTITUTION

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that defendant will be required to pay full restitution to the victim of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this

agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The government currently believes that the applicable amount of restitution is approximately $46,970,519, but the parties recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from providing services paid for under federal health care benefit programs for a minimum of five years, suspension or revocation of a professional license, and revocation of probation, parole, or supervised release in another case.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony

conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

14.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

In or about April 2000, defendant was hired as a substance abuse recovery counselor by Atlantic Recovery Services, later called Atlantic Health Services ("ARS").  In or about April 2001, defendant was promoted to the position of manager, and in or about April 2003, defendant was promoted to the position of Program Manager. Defendant was employed as the Program Manager of ARS from in or about April 2003 until mid-April 2013.  As the Program Manager, defendant supervised all ARS counselors and managers.

ARS purported to provide substance abuse treatment services to students covered by Medi-Cal, a publicly funded health care benefit program, affecting commerce, that provided coverage for medically necessary services to income-eligible individuals in California.

During the time that defendant worked at ARS, defendant knowingly and willfully participated in a scheme to defraud Medi-Cal in which (1) ARS billed Medi-Cal's Drug Medi-Cal program for

services to students who did not medically need alcohol or drug
treatment; (2) ARS billed Drug Medi-Cal for group and individual
counseling sessions that were not provided or did not meet the
requirements for reimbursement; and (3) defendant and others
falsified documentation to support the false claims.

Defendant knowingly authorized and approved the following
conduct by the ARS counselors and managers:

a.    maintaining student caseloads by enrolling students
in the ARS substance abuse counseling program even if they had used
drugs or alcohol only occasionally or even just once;

b.    collecting students' signatures on sign-in sheets for
counseling sessions, even if the students did not attend the
counseling sessions;

c.    recording times on sign-in sheets, Update Logs, and
Progress Notes to make it appear that the students on each sign-in
sheet were attending group counseling sessions at different times
with no more than ten students at the same time;

d.    preparing Progress Notes and Update Logs that falsely
showed that the students in the counselors and managers' caseloads
had attended 90-minute group counseling sessions up to five days
each week, even though defendant knew that the ARS counselors and
managers were not meeting with students every day;

e.    giving students who were absent a worksheet to
complete and then submitting false documentation reflecting that the
students had attended group counseling sessions that they had not
actually attended;

f.    having a one-on-one crisis session with every student
twice a month, even though defendant knew that a crisis session was

11

supposed to happen only when a student had a relapse or an "imminent threat" of relapse and could not be planned in advance; and

g.    billing for services conducted at unlicensed sites as if they had occurred at licensed sites to ensure payment from Medi-Cal.

Defendant knew that ARS would use the false Update Logs to generate claims for Medi-Cal reimbursement for group and individual counseling sessions and that the Progress Notes and falsified sign-in sheets would be maintained in the students' files as documentation supporting those claims in the event of a Medi-Cal audit.

Defendant told ARS counselors and managers to "be creative" when it came to billing for substance abuse counseling services and warned them that they would lose their jobs or have their hours reduced to part-time if they did not generate sufficient billing.

Defendant told Dr. Leland Whitson, the Medical Director of ARS, not to date the treatment plans he reviewed so that defendant or another ARS employee acting at defendant's direction could fill in a date that would make it appear as if the treatment plans had been prepared in compliance with Medi-Cal's regulatory requirements as to timing.

In furtherance of the scheme, defendant knowingly and willfully caused false and fraudulent claims, which she knew to be material to payment by Medi-Cal, to be submitted to the Drug Medi-Cal program by ARS, including, in particular, the following claim:

In or about January 2012, ARS submitted a false and fraudulent claim for Medi-Cal reimbursement (Drug Medi-Cal claim #A740308983), in the amount of $69.59 for an individual counseling (crisis)

session for Harding student E.R. allegedly provided by co-defendant Maribel Navarro on December 5, 2011, a day when the student also purportedly attended a group counseling session with his regular counselor, would not have needed to attend an individual counseling session with defendant Navarro, and, to the best of his recollection, did not attend an individual counseling session with defendant Navarro and did not make the statements identified in the Progress Note.

ARS submitted to the Drug Medi-Cal program claims totaling approximately $50,822,318 for counseling services purportedly provided by ARS counselors and managers acting at defendant's direction, and Medi-Cal paid approximately $46,970,519 on those claims.

SENTENCING FACTORS

15.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

16.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

```
        Base Offense Level:        6        [U.S.S.G. § 2B1.1(a)(2)]

        Specific Offense
        Characteristics

        Loss of more than
        $25,000,000 but not
        more than $65,000,000:    +22      [U.S.S.G. § 2B1.1(b)(1)(L)]

        Federal health care
        offense involving
        Government health
        care program:             +4       [U.S.S.G. § 2B1.1(b)(7)(iii)]

        Aggravating Role
        (Manager or Supervisor):  +3           [U.S.S.G. § 3B1.1(b)]
```

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be

represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

20.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.   Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of no more than 87 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the

Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $46,970,519; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 87 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following:  the amount of restitution ordered if that amount is less than $46,970,519.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be

admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

24.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

26.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand

17

jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

        d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

        27.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

        a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

        b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND PROBATION OFFICE NOT PARTIES

28.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise

20

regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

32.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

EILEEN M. DECKER
United States Attorney

_Cathy J. Ostiller_                     _6/23/16_
CATHY J. OSTILLER                       Date
Assistant United States Attorney

_Lori Renee Miller_                     _6-22-16_
LORI RENEE MILLER                       Date
Defendant

_Eileen Barry_                          _6·22·16_
EILEEN M. BARRY                         Date
Attorney for Defendant
LORI RENEE MILLER


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No

22

1  promises, inducements, or representations of any kind have been made

2  to me other than those contained in this agreement.  No one has

3  threatened or forced me in any way to enter into this agreement.  I

4  am satisfied with the representation of my attorney in this matter,

5  and I am pleading guilty because I am guilty of the charge and wish

6  to take advantage of the promises set forth in this agreement, and

7  not for any other reason.

8

9  _Lori Renee Miller_____       __6-22-16_____
   LORI RENEE MILLER                 Date

10  Defendant

11

12           CERTIFICATION OF DEFENDANT'S ATTORNEY

13      I am LORI RENEE MILLER's attorney.  I have carefully and

14  thoroughly discussed every part of this agreement with my client.

15  Further, I have fully advised my client of her rights, of possible

16  pretrial motions that might be filed, of possible defenses that

17  might be asserted either prior to or at trial, of the sentencing

18  factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

19  Guidelines provisions, and of the consequences of entering into this

20  agreement.  To my knowledge: no promises, inducements, or

21  representations of any kind have been made to my client other than

22  those contained in this agreement; no one has threatened or forced

23  my client in any way to enter into this agreement; my client's

24  decision to enter into this agreement is an informed and voluntary

25  ///

26  ///

27  ///

28  ///

23

one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.


ELLEN M. BARRY                                    Date  6·22·16
Attorney for Defendant
LORI RENEE MILLER